**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**MICHAEL GRAHAM,**

                    **Petitioner,**          **05 Civ. 3663 (JGK)**

          **- against -**                    **OPINION AND ORDER**

**WILLIAM LAPE, SUPERINTENDENT, MARCY**
**CORRECTIONAL FACILITY,**

                    **Respondent.**
─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    New York State prisoner Michael Graham, the
petitioner, who is currently incarcerated at the Marcy
Correctional Facility in Marcy, New York, brings this pro
se petition for habeas corpus pursuant to 28 U.S.C. § 2254.
After a jury trial, the petitioner was convicted of one
count of criminal sale of a controlled substance in the
third degree and sentenced to an indeterminate term of
imprisonment of five to ten years.  The petitioner asserts
that a writ of habeas corpus should be granted for two
reasons.  First, he claims that the evidence was legally
insufficient to establish that he committed the offense.
Second, he claims that the trial court's refusal to give an
agency charge to the jury denied him his constitutional
rights to present a defense and to a fair trial.  For the

reasons explained below, the petition for a writ of habeas
corpus is **denied**.

### I.

There was sufficient evidence at trial for the jury to
conclude as follows.  On the evening of June 13, 2002, an
undercover police officer, accompanied by a "ghost"[1]
partner, was assigned to purchase drugs as part of a police
"buy and bust" operation run by the Manhattan South
Downtown Narcotics Division.  (Trial Tr. vol. 1 ("Tr."),
32, Nov. 21, 2002.)  On this particular evening, the
undercover operation was looking to purchase crack,
cocaine, or marijuana.  (Id. at 34.)

At about 7:00 p.m., the undercover officer walked
toward the corner of 40th Street and Eighth Avenue, where
he saw the petitioner leaning against a cement divider.
(Id. at 36-38.)  With a cigarette in his mouth, the
undercover officer approached the petitioner, whom he had
never seen or heard of before, and asked the petitioner for
a light.  (Id. at 37-38, 46.)  The undercover officer asked
the petitioner "if anybody was out" and if "anybody had
crack."  (Id. at 38.)  The petitioner responded, "Yeah,
come on."  The undercover officer followed the petitioner a

---

[1] In this type of narcotics operation, a "ghost" officer serves as a
backup while the primary undercover officer purchases the contraband
material.  (Tr. at 31.)

short distance, where they came upon two individuals,
Jeremiah Murphy and Wesley Dietz.  The petitioner told
Murphy and Dietz, "Hook him up, he is okay," which the
undercover officer interpreted as "vouchering [sic] for
me."  (Id.)

Dietz then asked the undercover officer, "What you
looking for?"  The undercover officer responded that he was
looking for a "20 of rock," which was the street word for
crack cocaine.  (Id.)  Dietz said, "Okay," and Murphy told
the undercover officer to follow him.  (Id. at 38-39.)  The
undercover officer, Murphy, and the petitioner walked
around the corner, stopping underneath some scaffolding.
(Id. at 39.)  At that point, Murphy handed the undercover
officer two small ziplock bags bearing a Superman logo and
containing what appeared to be crack cocaine in exchange
for twenty dollars of pre-recorded buy money.[2]  (Id. at 39,
86-87.)

While the petitioner and Murphy were still standing
with the undercover officer, Dorothy Mickles abruptly
approached Murphy and handed him money.  (Id. at 39, 43).
Murphy then handed Mickles two ziplock bags, also bearing a
Superman logo.  (Id. at 43).  After this exchange, Murphy

---

[2] The ghost officer saw the petitioner walking with the undercover
officer but did not see the exchange.  (Tr. at 109.)

headed toward Eighth Avenue while the petitioner and Mickles walked together in the opposite direction, toward Ninth Avenue.  (Id. at 44.)  The undercover officer followed the petitioner and Mickles.  (Id.)

    While he was following the petitioner and Mickles, the undercover officer informed his field team of the transactions and the direction in which the petitioner and Mickles were walking.  (Id.)  The arresting officer identified the petitioner and Mickles at 40th Street and 9th Avenue and arrested them at the corner of 39th Street and 9th Avenue, as the undercover officer and the ghost officer watched.  (Id. at 119-20.)

    The undercover officer, who had maintained visual contact with the petitioner during the entire incident, radioed the arresting team that the correct suspects had been apprehended.  (Id. at 94).  A search of Mickles produced the two Superman bags she had purchased from Murphy, but the arresting team recovered nothing from the petitioner.  (Id. at 120.)  The arresting team apprehended Murphy and Dietz about thirty minutes later.  (Id. at 120-21.)  The undercover officer confirmed their identity shortly after the arrest.  (Id. at 45-46, 92.)  The parties stipulated that a New York Police Department chemist would testify that all four ziplock bags—the two Superman bags

4

that the undercover officer purchased from Murphy and the
two Superman bags recovered from Mickles after her arrest—
contained crack cocaine.  (Id. at 128.)

The court declined to charge the jury with respect to
an agency defense.[3]  (Id. at 140.)  The jury found the
petitioner guilty on the single charge of criminal sale of
a controlled substance in the third degree arising from the
crack cocaine sale to the undercover officer.[4]  (Id. at
232.)  The sentencing court imposed on the petitioner an
indeterminate sentence of five to ten years of
incarceration.  (Sentence Tr., 7, Dec. 18, 2002.)

The petitioner appealed his conviction to the
Appellate Division, First Department, asserting the same
two grounds for reversal that he presents in this habeas
petition.  (Br. for Def.-Appellant to Appellate Div., First
Dep't, Aug. 2003, at 2, attached as Ex. A to Decl. of
Thomas B. Litsky in Opp'n to Pet. for a Writ of Habeas
Corpus, Aug. 30, 2006.)  The Appellate Division unanimously
upheld the conviction, stating that "[t]he verdict was
based on legally sufficient evidence and was not against

---

[3] New York law provides a defense to a charge of selling narcotics when
the accused was acting solely on behalf of the buyer, as the buyer's
agent.  See People v. Lam Lek Chong, 379 N.E.2d 200, 205-06 (N.Y.
1978).

[4] The trial court dismissed a second charge of criminal sale of a
controlled substance, arising from the sale of cocaine to Mickles,
before the jury received the case.  (Tr. at 148.)

the weight of the evidence" and that an agency charge was
"properly declined" because "[t]here was no reasonable view
of the evidence, viewed most favorably to the defendant,
that he was acting on behalf of the buyer." People v.
Graham, 771 N.Y.S.2d 660, 660 (App. Div. 2004).  The
petitioner requested leave to appeal these rulings to the
New York State Court of Appeals, which that court denied.
People v. Graham, 814 N.E.2d 471 (N.Y. 2004) (table).

**II.**

Because a state court previously adjudicated the
petitioner's claims on the merits, this Court evaluates the
petitioner's claims using the deferential standard of
review set forth in 28 U.S.C. § 2254(d).  That section
provides, in relevant part:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States . . . .

28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362,
402-03 (2000); Lynn v. Bliden, 443 F.3d 238, 245-47 (2d
Cir. 2006).

A state court decision is contrary to clearly
established Federal law "if the state court arrives at a

6

conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result.  Williams, 529 U.S. at 405.

A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Williams, 529 U.S. at 407-08. To meet that standard, "the state court decision [must] be more than incorrect or erroneous;" it "must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

**A.**

The petitioner argues that the evidence adduced at trial was insufficient for a jury to find him guilty of the crime for which he was convicted.  The evidence in support of a conviction is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under the Jackson standard, a habeas petitioner "bears a 'heavy burden'" to establish that the evidence presented at trial was legally

insufficient.  Dixon v. Miller, 293 F.3d 74, 81 (2d Cir.
2002) (quoting United States v. Martinez, 54 F.3d 1040,
1042 (2d Cir. 1995)).  All permissible inferences are drawn
in favor of the prosecution, the verdict can be based
entirely on circumstantial evidence, and the government is
not required to refute every possible hypothesis supporting
the defendant's innocence.  Id.

     For sufficiency of the evidence claims relating to
state convictions, a habeas court "must look to state law
to determine the elements of the crime."  Quartararo v.
Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999).  Pursuant to
New York Penal Law ("Penal Law") § 220.39(1), a person is
guilty of a Criminal Sale of a Controlled Substance in the
Third Degree if the person "knowingly and unlawfully sells
. . . a narcotic drug."  Cocaine is a narcotic drug.  See
Penal Law § 220.00(7).  To "sell" is defined as "to sell,
exchange, give or dispose of to another, or to offer or
agree to do the same."  Id. § 220.00(1).  Finally, Penal
Law § 20.00 defines accessorial liability.  "When one
person engages in conduct which constitutes an offense,
another person is criminally liable for such conduct when,
acting with the mental culpability required for the
commission thereof, he solicits, requests, commands,

importunes, or intentionally aids such person to engage in such conduct." Id. § 20.00.

The petitioner does not dispute that Murphy sold a narcotic drug to the undercover officer.  Instead, he contends that there was no evidence to find him guilty of that sale as an accessory.

Viewed in the light most favorable to the prosecution, the evidence produced at trial was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that the elements of accessory liability were present.  The testimony of the undercover officer established that upon being asked if anyone was selling crack, the petitioner, who previously had never met the undercover officer, responded affirmatively and took the undercover officer directly to Murphy and Dietz.  The undercover officer's testimony further established that the petitioner vouched for the undercover officer and instructed them to "hook him up."  At that point, the undercover officer asked for crack from Dietz, and then followed Murphy and the petitioner around the corner where the transaction took place.  The petitioner accompanied Murphy and the undercover officer to the place where Murphy sold the crack to the undercover officer, and the petitioner was arrested in the presence of

9

another individual who had purchased similarly packaged drugs from Murphy.

A rational juror could reasonably conclude that this evidence established, beyond a reasonable doubt, that the petitioner intentionally steered the undercover officer to Dietz and Murphy so that they could sell the crack cocaine to the undercover officer, and thereby "intentionally aid[ed]" them in committing that offense.  The state court decision thus is not contrary to clearly established federal law and does not constitute an objectively unreasonable (or even an erroneous) application of clearly established federal law.

**B.**

New York law provides a defense to a charge that an individual was selling drugs if the charged defendant was acting solely as an agent for the buyer.  See Lam Lek Chong, 379 N.E.2d at 205-06.  The petitioner's second claim is that the trial court's refusal to charge the jury on this defense deprived him of an opportunity to present a defense and his right to a fair trial.

The Supreme Court has instructed that a state court's failure to give a particular jury instruction does not raise a federal question unless the failure to give the instruction "'so infected the entire trial that the

resulting conviction violates due process.'" <u>Estelle v.</u>
<u>McGuire</u>, 502 U.S. 62, 72 (1991) (<u>quoting</u> <u>Cupp v. Naughten</u>,
414 U.S. 141, 147 (1973)).  Federal courts "must of course
defer to state-court interpretations of the state's laws,
so long as those interpretations are themselves
constitutional" when deciding whether the evidence requires
a particular jury instruction under state law.  <u>Davis v.</u>
<u>Strack</u>, 270 F.3d 111, 123 n.4 (2d Cir. 2001).  In deciding
if the failure to give a jury instruction on a particular
defense violated the defendant's federal due process right,
a court must first find that the habeas petitioner was
"erroneously deprived of a jury instruction to which he was
entitled under state law."  <u>Id.</u> at 123.  If the court makes
that finding, it must then ask whether the failure to give
the requested charge was so harmful as to make the
conviction unfair.  <u>Jackson v. Edwards</u>, 404 F.3d 612, 621
(2d Cir. 2005).

     New York law does not require an instruction on the
agency defense "[u]nless some reasonable view of the
evidence supports the theory that defendant was acting only
on behalf of the buyer. . . . A defendant may be guilty as
a seller even if he does not receive any consideration for
the transfer of drugs to the buyer." <u>People v. Herring</u>,
632 N.E.2d 1272, 1273 (N.Y. 1994) (memorandum opinion).  To

11

qualify for the agency defense, the defendant must be viewed as a mere extension of the buyer, procuring the drugs only because the buyer has asked and not from an independent desire to promote the transaction.  See People v. Argibay, 379 N.E.2d 191, 195 (N.Y. 1978) (per curiam). The availability of the agency defense thus turns on the defendant's relationship with the buyer.  See id.; Herring, 632 N.E.2d at 1273 ("[T]he evidence must be indicative of a relationship with the buyer not merely raise ambiguities about the defendant's connection with the seller.").

There is no reasonable view of the evidence presented at trial that supports the conclusion that the petitioner was acting solely on behalf of the buyer of the drugs.  The undercover officer was a complete stranger to the petitioner before this interaction; upon asking if anyone had crack, the petitioner immediately understood the undercover officer's request and took him to Dietz and Murphy, and the sale was thereafter made.  Although there was no evidence that the petitioner received any monetary gain from the transaction, such consideration is not necessary to establish guilt as a seller of narcotics and the absence of such consideration is insufficient to warrant an agency charge.  See Herring, 632 N.E.2d at 1273. Moreover, "evidence that defendant was acting as a

middleman is not sufficient to warrant [the agency] charge." Herring, 632 N.E.2d at 1273.   The evidence that was presented in this case cannot reasonably be construed to show that the petitioner was acting solely on behalf of the buyer.

State law did not require that the trial court give the jury an agency instruction.   The refusal of the trial court to give the instruction did not violate due process and therefore is not contrary to or an unreasonable application of clearly established federal law.

CONCLUSION

For the reasons stated above, this petition for a writ of habeas corpus is **denied**.   The Court declines to issue a certificate of appealability because the petitioner has failed to make a substantial showing of the denial of a constitutional right.   See 28 U.S.C. § 2253(c)(2).   The Clerk of the Court is directed to enter judgment denying the petition and closing this case.

**SO ORDERED**

Dated:     New York, New York
           February 15, 2007

                                    6. Koeltl
                              John G. Koeltl
                         United States District Judge